IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01848-DDD

JEFFERY S. DURHAM,

     Applicant,

v.

M. STARR, Acting Warden,

     Respondent.

---

**RESPONSE TO ORDER TO SHOW CAUSE (ECF No. 12)**

---

     Respondent[1] responds to the July 24, 2024, Order to Show Cause.  ECF No. 12.  In his Application for Writ of Habeas Corpus, ECF No. 1 (filed 7/1/24), Applicant Jeffery S. Durham challenges the way that Respondent runs the voluntary Inmate Financial Responsibility Program ("IFRP") at the U.S. Penitentiary – Administrative Maximum.  The IFRP is a program that inmates may choose to use to help pay their criminal monetary penalties in installments.  Durham contends that Respondent is violating Federal Bureau of Prisons ("BOP") regulations when: (1) calculating the amount of his proposed IFRP payments; and (2) withholding privileges from inmates who decline to participate in the IFRP.  For relief, Durham seeks an order directing Respondent to exclude $75 per month from the calculation of his available funds, as contemplated in 28 C.F.R. § 545.11(b), and prohibiting respondent from encumbering his inmate trust fund account if he refuses to participate in the IFRP.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), current Acting Warden Starr is automatically substituted for former Warden Ciolli.  *See* Fed. R. Civ. P. 25(d).

1

The Court should deny the Application for four reasons. *First*, Durham does not challenge the fact or duration of his federal custody and therefore does not bring a cognizable claim under 28 U.S.C. § 2241. *Second*, the action is both constitutionally and prudentially moot because the ADX has recalculated Durham's proposed IFRP payments, incorporating the $75-per-month exclusion about which he complains. Additionally, the ADX has issued guidance that, going forward, when IFRP plans are periodically reviewed, ADX staff are to exclude $75 per month from the calculation of inmate funds available for the IFRP, so long as 28 C.F.R. § 545.11(b) remains in effect. Regarding the effects of nonparticipation in the IFRP, the ADX already allows inmates who have encumbered trust fund accounts to spend $25 per month, consistent with § 545.11(d)(6). Because there is no further relief for the Court to order, and there is no reasonable expectation that any alleged violations of these BOP regulations will recur, the Court lacks jurisdiction over this action or should decline to issue any equitable relief. *Third*, Durham fails to show that the ADX is violating § 545.11(d)(6) by permitting inmates on IFRP refusal status to spend $25 per month from their trust fund accounts. *Fourth*, the BOP uses the IFRP to help inmates develop financial plans, and nothing in the regulation requires the BOP to develop a customized financial plan for each inmate outside of the IFRP. The Court should deny the Application.

## BACKGROUND

Durham is an inmate at the U.S. Penitentiary - Administrative Maximum ("ADX"). ECF No. 1 at 1. Durham currently owes more than $480,000 in restitution. **Exhibit 1** (Declaration of D. English) ¶ 2.

**The IFRP at the ADX.** The IFRP is a voluntary BOP program that provides a structure

2

for inmates to pay their criminal debts, often in small monthly or quarterly payments.  *See generally* 28 C.F.R. § 545.11; Ex. 1 ¶ 4.  Under the IFRP, a BOP staff member, usually the case manager on the inmate's unit team, calculates how much money an inmate should be asked to allocate to his criminal financial obligations and at what frequency (monthly or quarterly), based on his work income, other deposits, account balances, and the amount of his IFRP payments in the prior six months.  *See* Ex. 1 ¶¶ 3-4; 28 C.F.R. § 545.11(b); Program Statement 5380.08, Financial Responsibility Program, Inmate (Aug. 15, 2008) at 8, available at https://www.bop.gov/policy/progstat/5380_008.pdf (last visited Aug. 22, 2024).  28 C.F.R. § 545.11(b) instructs the unit team to "exclude from its assessment" of available funds for IFRP participation "$75.00 a month deposited into the inmate's trust fund account.  This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS)."  A BOP staff member then approaches the inmate with a contract containing those proposed payment terms.  Ex. 1 ¶ 4.  The inmate may sign the agreement or decline to participate.  *Id.*; 28 C.F.R. § 545.11(d).  For participating inmates, the ADX automatically withdraws the contractual amount from the inmate's trust fund account at the agreed-upon frequency and delivers the money to the payee or to an intermediary who will deliver it to the payee.  **Exhibit 2** (Declaration of K. Dell) ¶ 4.  Payment plans are reviewed and adjusted, if necessary, on a regular basis.  Ex. 1 ¶ 4; 28 C.F.R. § 545.11(c).

Certain privileges at the ADX are available only to inmates who participate in the IFRP. Ex. 1 ¶ 6.  BOP regulations enumerate what "ordinarily" should be the "[e]ffects" of non-participation in the IFRP but do not state that the enumerated effects are exclusive or exhaustive. 28 C.F.R. § 545.11(d).  Among those "ordinar[y]" consequences is a spending limitation of "at

3

least $25 per month." 28 C.F.R. § 545.11(d)(6).  The ADX allows inmates on IFRP refusal status to spend up to $25 per month, despite any encumbrance otherwise placed on their accounts.  Ex. 2 ¶ 5.  Each month, the ADX compiles a list of inmates on IFRP refusal status, and the trust fund supervisor will allow those inmates an opportunity to spend up to $25 from their encumbered accounts.  *Id.*

**Durham's IFRP participation and status.**  Durham has been participating in the IFRP without interruption since May 7, 2023.  Ex. 1 ¶ 7.  On August 19, 2024, Durham's case manager, D. English, received clarifying guidance from the Acting Warden that, going forward, case managers at the ADX are to incorporate the $75-per-month exclusion into the assessment of an inmate's available funds for the IFRP, despite the fact that telephone services at the ADX are currently provided free of charge to the inmates.[2]  Ex. 1 ¶ 8 & Attach. 1; Ex. 2 ¶ 3.  Pursuant to that guidance, English reviewed Durham's IFRP payments and recalculated his proposed payment plan, factoring in the $75-per-month exclusion for telephone communications.  Ex. 1 ¶ 8.  English prepared a proposed IFRP agreement for Durham pursuant to which he would pay $25 per quarter.  *Id.*  Durham signed the agreement on August 20, 2024.  *Id.* ¶ 8 & Attach. 2.

**The Application.**  The Application contains three claims, but they all focus on the same underlying conduct related to the IFRP.  In Claim One, Durham alleges that the ADX is not following 28 C.F.R. § 545.11(b) when it calculates potential IFRP payments, because it does not exclude $75 per month from his available funds.  ECF No. 1 at 9 ¶ 10.  He further alleges that the ADX violates 28 C.F.R. § 545.11(d)(6) when it encumbers inmates' trust fund accounts for not participating in the IFRP.  *Id.* at 11 ¶ 13.  Claims Two and Three allege that this same conduct

---

[2] The ADX has not charged inmates to use the Inmate Telephone System since 2020.  Ex. 2 ¶ 3.

4

violates the Administrative Procedure Act and the Mandamus Act, respectively. *Id.* at 14-15.

## ARGUMENT

**I.      Durham does not raise a claim cognizable under Section 2241.**

Durham does not challenge the fact or duration of his federal custody, and therefore does not state a cognizable claim under § 2241. He contends that the amount of his monthly IFRP payment is too high and that the ADX should allow him to spend at least $25 per month from his trust fund account. These are not § 2241 claims, and the petition should be denied.

A habeas action under § 2241 permits a prisoner to seek a writ of habeas corpus on the ground that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The "'core of habeas corpus'" is a claim that "would necessarily spell speedier release." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention," not "to achieve an entirely different end[.]"); *Skinner v. Switzer*, 562 U.S. 521, 534 (2011) ("Switzer has found no case, nor has the dissent, in which the Court has recognized habeas as the sole remedy, or even an available one, where the relief sought would neither terminat[e] custody, accelerat[e] the future date of release from custody, nor reduc[e] the level of custody.") (quotation marks omitted).

The "types of claims cognizable under § 2241 are those in which an individual seeks either immediate release from, or a shortened period of, physical imprisonment, *i.e.,* placement on parole or in a parole-like custodial setting, or immediate release from, or a shortened period of, custody altogether." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 n.2 (10th Cir. 2012). The "fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the

5

legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Id.* at 1035 (quotation marks omitted); *see also Leatherwood v. Allbaugh*, 861 F.3d 1034, 1041 (10th Cir. 2017) (a § 2241 petition is a vehicle to attack "'the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement'"); *Wilson v. Jones*, 430 F.3d 1113, 1120 (10th Cir. 2005) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997), for the proposition that "a habeas petition under § 2241 may be granted only if the challenged state action 'affect[ed] the ... duration of the petitioner's custody'"). Indeed, "the essential nature of *all* § 2241 actions is a challenge to federal custody . . . ." *McIntosh*, 115 F.3d at 812.

Some unpublished Tenth Circuit opinions suggest that certain claims about restitution payments may be brought under § 2241 as an attack on the execution of the inmate's sentence. *See O'Banion v. Matevousian*, 835 F. App'x 347, 350 (10th Cir. 2020); *Dade v. Sanders*, 510 F. App'x 714, 717 & n.5 (10th Cir. 2013); *Wallette v. Wilner*, 321 F. App'x 735, 738 (10th Cir. 2009); *Davis v. Wiley*, 260 F. App'x 66, 68 & n.2 (10th Cir. 2008); *United States v. Bowen*, 225 F. App'x 765, 767 n.2 (10th Cir. 2007).[3] But to support this proposition, these cases rely on authorities involving *custodial* challenges, without justifying the expansion of § 2241 to matters that do not concern the fact or duration of federal custody.[4] These non-binding authorities do not

---

[3] None of these cases ultimately granted prisoners the relief they sought under § 2241. *See O'Banion*, 835 F. App'x at 350; *Dade*, 510 F. App'x at 718; *Wallette*, 321 F. App'x at 739; *Davis*, 260 F. App'x at 69; *Bowen*, 225 F. App'x at 769.

[4] For example, *Davis* and *Bowen* relied on *Bradshaw v. Story*, 86 F.3d 164, 166-67 (10th Cir. 1996). *See Davis*, 260 F. App'x 66 at 68 (citing *Bradshaw*); *Bowen*, 225 F. App'x at 767 n.2 (same). But *Bradshaw* concerned whether the district court "used unconstitutional Florida convictions to enhance [Bradshaw's] federal sentence"—a challenge to the duration of his custody. *Bradshaw*, 86 F.3d at 165. *Dade* relied on *Haugh v. Booker*, 210 F.3d 1147, 1149 (10th Cir. 2000). *See Dade*, 510 F. App'x at 717 n.5 (citing *Haugh*). But in *Haugh*, the prisoner

persuasively establish that challenges to the BOP's optional financial responsibility program are cognizable under § 2241.  *See Davis v. True*, No. 20-1447, 2022 WL 1218633, at *5 (10th Cir. Apr. 26, 2022) (noting that *Dade* and *Wiley*, which recognize that relief under § 2241 may be appropriate "in certain narrow circumstances outside of immediate release," "are not binding precedent of course").  Indeed, these authorities cannot be squared with: (1) binding precedent that § 2241 actions must challenge federal custody, *see, e.g.*, *McIntosh*, 115 F.3d at 812; or (2) the fact that the IFRP is a voluntary program that does not execute Durham's sentence but rather gives him the choice to pay his obligations using BOP infrastructure.  *See Brooks v. Hanson*, 763 F. App'x 750, 752 (10th Cir. 2019) (holding that the district court correctly ruled that it lacked jurisdiction to hear a § 2241 petition that challenged the "amount of restitution owed," because the applicant was not "in custody with respect to his claim challenging the

---

challenged his firearms conviction, and the Tenth Circuit ruled that the action should have been brought under 28 U.S.C. § 2255 as an attack on the validity of his sentence, citing *Bradshaw*. *Haugh*, 210 F.3d at 1149-50.  *Wallette* relied on *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007).  *See Wallette*, 321 F. App'x at 738 (citing *Howard*).  But in *Howard*, the prisoner sought to restore lost good-time credits—a challenge to the duration of custody. *Howard*, 487 F.3d at 811.  *O'Banion* did not provide a citation for the proposition that § 2241 actions "provide an adequate remedy to review alleged abuses of the IFRP."  *See O'Banion*, 835 F. App'x at 350.

   *Davis* and *Dade* also cited *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002), an Eighth Circuit case that rejected a § 2241 challenge to the BOP's authority to use the IFRP in connection with restitution that was due immediately.  *See Matheny*, 307 F.3d at 711-12; *Davis*, 260 F. App'x 66 at 68 & n.2 (citing *Matheny*); *Dade*, 510 F. App'x at 717 n.5 (same).  But *Matheny* did not cite any precedent for its authority to hear IFRP challenges under § 2241. Rather, it cited an unpublished case affirming dismissal of a § 2241 action that claimed that the BOP was illegally setting the amount and timing of restitution payments.  *See Matheny*, 307 F.3d at 711 (citing *Alevras v. Snyder*, No. 99-2467, 1999 WL 1059831, at *1 (8th Cir. Nov. 16, 1999)).  In any event, *Matheny* is not binding in this circuit.  None of the foregoing authorities persuasively explains why matters unrelated to the fact or duration of custody are the proper subject of § 2241 or why running a voluntary program to help inmates repay their criminal debts is executing the prisoner's sentence.

restitution order").

Durham does not seek relief affecting the fact or duration of his custody. He challenges only how the BOP implements the IFRP. Unlike a criminal sentence, an IFRP agreement does not set an inmate's restitution amount or mandate a payment schedule for nonconsenting inmates. *See* Ex. 1 ¶ 5. Thus, the IFRP does not execute Durham's sentence; it provides an optional mechanism for an inmate to pay off his debts, should he choose to use it. *Id.*; *see also United States v. Lemoine*, 546 F.3d 1042, 1048 (9th Cir. 2008) ("nothing in the text of the [Mandatory Victim Restitution Act] or our prior decisions places any limits on the BOP's operation of an independent program, such as the IFRP, that encourages inmates voluntarily to make more generous restitution payments than mandated in their respective judgments."). Durham's complaints about the program's implementation are not the proper subject of a § 2241 petition. *See True*, 2022 WL 1218633, at *6 ("Because Mr. Davis 'does not challenge the underlying authority of the BOP to hold him in custody,' . . . Mr. Davis's case is distinguishable from the narrow circumstance that *Montez* [*v. McKinna*, 208 F.3d 862 (10th Cir. 2000)] contemplated, which allowed a prisoner to bring a claim under § 2241."); *Erlandson v. Northglenn Mun. Ct.*, 528 F.3d 785, 788 (10th Cir. 2008) ("[t]he payment of restitution or a fine, absent more, is not the sort of significant restraint on liberty contemplated in the custody requirement of federal habeas statutes") (quotation marks omitted); *Brooks*, 763 F. App'x at 752 (non-custodial challenge could not be brought under § 2241).

To the extent Durham's claims concern the conditions of his confinement—how much money he may spend on goods or services at the ADX and whether he is eligible for certain privileges—such claims are not the proper subject of a § 2241 petition, either. *See Palma-*

*Salazar*, 677 F.3d at 1038-39 (holding that the district court "lacked jurisdiction under 28 U.S.C. § 2241 to consider" conditions-of-confinement claims). Because Durham does not challenge the fact or duration of his custody, and the IFRP does not execute his sentence, his application should be denied.

## II.     Durham's Application is moot.

### A.     The conduct Durham describes cannot reasonably be expected to recur.

The Court lacks jurisdiction over this action for another reason: the Application is moot. Courts "have no subject-matter jurisdiction if a case is moot." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "'Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.'" *Id.* (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)). Under Article III's case-or-controversy requirement, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quotation marks omitted). A case becomes moot "when intervening acts destroy a party's legally cognizable interest in the outcome of adjudication." *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004). Courts have "no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Navani v. Shahani*, 496 F.3d 1121, 1127 (10th Cir. 2007) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

"In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Abdulhaseeb v.*

9

*Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (quotation marks omitted).  Put differently, a case is moot "when a plaintiff no longer suffers 'actual injury that can be redressed by a favorable judicial decision.'" *Rhodes v. Judiscak*, 676 F.3d 931, 933 (10th Cir. 2012).  A party's interest in the outcome of the case must be "'more than simply the satisfaction of a declaration that a person was wronged.'" *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004).

One exception to the mootness doctrine is voluntary cessation of an alleged illegal practice that the defendant is free to resume at any time.  *Silvery Minnow*, 601 F.3d at 1115.  But even voluntary action can moot litigation if: "'(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  *Id.*  The burden to show voluntary cessation is normally "heavy," but, "[i]n practice," the "heavy burden frequently has not prevented government officials from discontinuing challenged practices and mooting a case."  *Id.* at 1116.  Most cases that deny the mootness defense, despite voluntary cessation, "'rely on *clear showings* of reluctant submission [by governmental actors] and a desire to return to the old ways.'"  *Id.* at 1117.  "'[W]ithdrawal or alteration of administrative policies can moot an attack on those policies,'" and "the 'mere possibility' that an agency might rescind amendments to its action or regulations does not enliven a moot controversy."  *Id.*  Courts focus their inquiry on "the potential for a defendant's future conduct."  *FBI v. Fikre*, 601 U.S. 234, 244 (2024).

Here, Durham has received the relief that he could obtain in this action: a recalculation of his proposed IFRP payment.  Ex. 1 ¶ 8 & Attach. 2.  Further, the ADX has issued guidance that, going forward, Durham's proposed IFRP payments will be calculated with the $75-per-month

exclusion factored in, so long as that regulation remains in effect. *Id.* ¶ 8 & Attach. 1. The ADX also allows inmates who do not participate in the IFRP to spend $25 each month from their encumbered accounts, consistent with 28 C.F.R. § 545.11(d)(6). Ex. 2 ¶ 5.  Based on these facts, there is no *reasonable* expectation that that the alleged violations of the BOP regulations will recur, only a mere possibility.  Consequently, the case is constitutionally moot.

> **B.   The Court should invoke the doctrine of prudential mootness.**

Even if a controversy is not constitutionally moot, the Court, in its discretion, may choose not to exercise its equitable powers to issue injunctive or declaratory relief.  *See Bacote v. Fed. Bureau of Prisons*, 94 F.4th 1162, 1166 (10th Cir. 2024).  Prudential mootness "concerns 'not the power to grant relief but the court's discretion in the exercise of that power.'" *Id.*  If no "'cognizable danger of recurrent violation' exists, beyond a 'mere possibility,'" then "prudence counsels us not to reach the merits . . . .'" *Id.* at 1166.  A suit is prudentially moot "if the 'circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful relief.'" *Id.*

Here, the Court may appropriately hold that the case is prudentially moot.  The ADX "no longer subjects" Durham "to the specific conditions from which [he] seeks relief." *Id.* at 1167. The ADX recalculated Durham's proposed IFRP payment in the manner requested in the Application and has issued guidance to incorporate the $75-per-month exclusion in future calculations, so long as that regulation is in effect.  Ex. 1 ¶ 8 & Attach. 1. Regarding the consequences of IFRP refusal status, the ADX already allows inmates in refusal status to spend up to $25 per month from their trust fund accounts, consistent with § 545.11(d)(6). Ex. 2 ¶ 5. Therefore "circumstances [have] changed since the beginning of litigation that forestall any

occasion for meaningful relief," and there is not a "cognizable danger of recurrent violation beyond a mere possibility." *Bacote*, 94 F.4th at 1166-67.  Relatedly, the record shows that Durham's current "conditions [are] preferable to those about which [he] complained," which "confirms" that the Court "should apply prudential mootness and dismiss this case." *Id.* at 1167-68.

**III.    The ADX's IFRP refusal practices do not violate federal regulations.**

Durham contends that the ADX's practice of encumbering inmates' trust funds accounts when they do not participate in the IFRP violates § 545.11(d)(6).  *See, e.g.*, ECF No. 1 at 10 ¶ 12.  But the ADX's practice of allowing inmates to spend up to $25 per month is consistent with the relief that "ordinarily shall result" from IFRP refusal per the regulation, namely a spending limitation of no less than $25 per month.  Ex. 2 ¶ 5; § 545.11(d)(6).  Durham has not shown a violation of § 545.11(d)(6).

**IV.    The IFRP satisfies the regulatory requirement to "help" inmates develop financial plans.**

Finally, Durham argues that the ADX is not "help[ing]" him develop a financial plan. ECF No. 1 at 6-7 ¶ 7.  The regulation provides: "When an inmate has a financial obligation, unit staff shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation."  28 C.F.R. § 545.11.  The regulation goes on to describe IFRP procedures.  *See* 28 C.F.R. § 545.11(a)-(d).  Thus, the IFRP payment plans *are* the "financial plan[s]" contemplated by § 545.11.  Durham lacks any authority for his contention that the regulation requires the ADX to customize a financial plan for each inmate, beyond assessing each inmate's financial resources through the IFRP.  Durham's theory that the ADX must develop a different kind of financial plan for him and every other inmate lacks any legal basis

and would impose an immense administrative burden on the BOP. The Court should reject the argument, based on the language and structure of § 545.11.

## CONCLUSION

Respondent respectfully requests that the Court deny the Application.

Submitted this 22nd day of August, 2024.

> MATTHEW T. KIRSCH
> Acting United States Attorney
>
> s/ Thomas A. Isler
> **Thomas A. Isler**
> Assistant United States Attorney
> 1801 California St., 16th Fl.
> Denver, CO 80202
> Telephone: (303) 454-0336
> Email: thomas.isler@usdoj.gov
> *Counsel for Respondent*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

> s/ Thomas A. Isler
> **Thomas A. Isler**
> Assistant U.S. Attorney

13

## CERTIFICATE OF SERVICE

I certify that on August 22, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and directed staff in the U.S. Attorney's Office to mail a copy via U.S.P.S., along with copies of unpublished authority cited therein, to:

Jeffery Durham #32060-083
U.S. Penitentiary - ADMAX
P.O. Box 8500
Florence, CO 81226
*Applicant, pro se*

                                                s/ Thomas A. Isler
                                                **Thomas A. Isler**
                                                Assistant United States Attorney